UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Northern Promotions, Inc.

        Plaintiff,                                 MEMORANDUM OPINION
                                            AND ORDER
v.                                                      Civil No. 16-626 ADM/LIB

General Casualty Company of Wisconsin,

        Defendant.

_____

Kurt M. Mitchell, Esq., Hellmuth & Johnson PLLC, Edina, MN, on behalf of Plaintiff.

Andrea E. Reisbord, Bassford Remele, PA, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On June 7, 2016, the undersigned United States District Judge heard oral argument on Defendant General Casualty Company of Wisconsin's ("General Casualty") Motion to Dismiss [Docket No. 5] and on Plaintiff Northern Promotions, Inc.'s ("Northern") Motion to Compel Appraisal Hearing [Docket No. 13]. For the reasons set forth below, General Casualty's motion is granted and Northern's motion is denied.

## II. BACKGROUND

On May 28, 2012, a wind and hail storm damaged Northern's property located in Aitkin, Minnesota. Compl. [Docket No. 1-1] ¶¶ 1, 3. An insurance policy issued by General Casualty provided coverage for Northern's property loss incurred by wind and hail damage. Id. ¶ 4.

Northern and General Casualty dispute when Northern tendered notice of a claim: Northern avers it provided notice of the loss to General Casualty almost immediately after the

storm, while General Casualty contends that it first received notice on May 22, 2014.[1] Duffney Decl. [Docket No. 17] ¶ 3; Stover Decl. [Docket No. 24] ¶ 7; Ex. E. Whichever date of notice applies, the parties agree that notice of a claim was received by General Casualty within two years of the storm. This is significant because Northern's policy issued by General Casualty includes a suit limitations provision, which provides that "[n]o one may bring a legal action against us . . . unless . . . the action is brought within 2 years after the date on which the direct physical loss or damage occurred." Prouty Decl. [Docket No. 8] Ex. A at 29.[2] The policy also provides either party the right to an appraisal if the value of loss is disputed. Id. at 12.

On June 3, 2014, QBE Americans, Inc. ("QBE"), General Casualty's third-party administrator, retained an independent adjuster to inspect Northern's property. Duffney Decl. Ex. A. The inspection determined that the actual cash value of the loss, less recoverable depreciation and the policy's deductible, was $2,132.00, which was tendered to Northern. Id. Ex. B; Stover Decl. ¶ 8. Northern later disputed the amount of loss and requested a second inspection of the property. Duffney Decl. ¶ 5. General Casualty honored Northern's request and, in June 2015, the property was inspected for a second time, a year after the initial inspection. Id. ¶ 6. The adjuster and structural engineer who inspected the property determined that only the damage to the property's air conditioning unit was caused by the May 2012 storm. Stover Decl. ¶ 10. The results of the second inspection were conveyed to Northern in a letter dated July 20,

---

[1] General Casualty has no written notice in its file of any claim Northern made prior to May 22, 2014, and Northern has not provided any documentation to support its averment that it provided notice of a claim immediately after the storm. Any claim Northern made before May 22, 2014 must have been oral and undocumented by either party.

[2] The page numbers for Exhibit A to the Prouty Declaration refer to the pagination generated by the CM/ECF system.

2015. The letter states that the replacement cost loss from the storm is $17,996.00 and, after deductions for depreciation and the policy deductible, the actual cash value of the claim is $1,713.20. Id. Ex. C. The letter further reads that "[i]f we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss." Id. General Casualty again issued payment to Northern for the loss.[3] Id. ¶ 10.

Northern then retained counsel to assist with its claim. Duffney Decl. ¶ 7. In September 2015, Northern's counsel wrote General Casualty and requested the parties enter into a tolling agreement. Stover Decl. ¶ 11. General Casualty declined to toll the limitations period. Id. Ex. H. Sometime later, counsel for Northern again wrote General Casualty. Id. ¶ 12. While that letter is not in the record, General Casualty's December 22, 2015 response is, and it states that the "Statute of Limitations has run on this claim as previously acknowledged by [Northern's counsel]." Id. Ex. I.

On January 5, 2016, counsel for Northern demanded an appraisal. Beckmann Decl. [Docket No. 16] Ex. A. That request was refused because the policy's suit limitation period had expired. Id. Ex. B.

Northern filed suit in Aitkin County, seeking a declaratory judgment that it is entitled to an appraisal due to the terms of the policy and General Casualty's participation in investigating and adjusting the loss. General Casualty removed the action to federal court under 28 U.S.C. § 1332 and now moves for dismissal, arguing that the policy's two-year suit provision precludes the appraisal Northern seeks.

---

[3] General Casualty admits that it "mistakenly issued payment on the damaged air conditioning unit a second time." Reply Mot. Dismiss [Docket No. 26] at 4–5.

### III.  DISCUSSION

**A.  Legal Standard**

The first issue is whether General Casualty's motion to dismiss should be converted into a motion for summary judgment.  When considering a motion to dismiss, courts do not rely on documents outside the pleadings.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  An exception to that general rule are matters that are "necessarily embraced by the pleadings."  Piper Jaffray Cos., v. Nat'l Union Fire Ins. Co. of Pittsburgh, 967 F. Supp. 1148, 1152 (D. Minn. 1997).  If documents outside the pleadings are submitted, a court retains "complete discretion" in deciding whether to accept them.  Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 701 (8th Cir. 2003).  However, parties must be afforded a reasonable opportunity to present material pertinent to the motion.  Fed. R. Civ. P. 12(d).  If accepted, the motion to dismiss "must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

The present motion to dismiss will be converted into a motion for summary judgment pursuant to Rule 12(d).  Northern's Complaint lacks any supporting documentation; even the applicable insurance policy is not attached.  While the insurance policy is embraced by the pleadings, other materials submitted by the parties are likely not.  The extent to which the supporting documentation is in fact embraced by the pleadings does not need to be determined because both parties briefed and argued the motion as if it were for summary judgment.  Both parties also submitted additional documentation to support their respective positions.  Additionally, at the hearing, both parties concluded that they did not oppose transforming the present motion to dismiss into one for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall

be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (quotation marks omitted).

**B. Two-Year Suit Provision**

Normally, a party has six years to bring a contract claim in Minnesota. Minn. Stat. § 541.05, subd. 1. Parties may, however, "limit the time within which legal claims may be brought provided there is no statute specifically prohibiting the use of a different limitations period in such a case and the time fixed is not unreasonable." Peggy Rose Revocable Trust v. Eppich, 640 N.W.2d 601, 606 (Minn. 2002). Northern does not directly contest the validity of the two-year suit provision. And for good reason, as courts have upheld the validity of two-year suit limitations provisions. Hansen v. Merkel Am. Ins. Co., No. 15-2833, 2016 WL 2901738, at *3–6 (D. Minn. May 18, 2016). Rather, Northern contests the enforceability of the suit limitations provision, arguing that either equitable estoppel or waiver renders the provision unenforceable. Northern also argues that, like demands for arbitration, the limitations period for appraisal demands begins on the day appraisal is requested, and therefore, its request was timely.

**1. Equitable Estoppel**

Northern argues that General Casualty's conduct estops it from asserting the suit limitation provision to bar the requested appraisal. Northern contends that General Casualty,

through its third-party administrator QBE, twice inspected the property more than two years after the May 28, 2012 storm. Significantly, the final adjustment, which took place well after the limitations period expired on May 28, 2014, explicitly invited Northern to participate in an appraisal if it did not agree with the amount of loss. In response, General Casualty argues that its conduct did not lull Northern into inactivity, and it also did not engage in any misleading or inequitable conduct that voids the effect of the suit limitation provision.

Equitable estoppel is an equitable defense intended to prevent one party from taking an unconscionable advantage of its own wrongful conduct while concurrently asserting its own strict legal rights. Lundberg v. Nw. Nat. Bank of Minneapolis, 216 N.W.2d 121, 124 (Minn. 1974). Under Minnesota law, "[a] party seeking to invoke the doctrine of equitable estoppel has the burden of proving three elements: (1) that promises or inducements were made; (2) that it reasonably relied upon the promises; and (3) that it will be harmed if estoppel is not applied." Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990). Equitable estoppel may be invoked to bar application of an insurance policy's limitation condition provided that it would be "unjust, inequitable, or unconscionable to allow the defense to be interposed." L & H Transp., Inc. v. Drew Agency, Inc., 403 N.W.2d 223, 227 (Minn. 1987). "Promises intended to induce a party to refrain from taking action may estop a defendant from asserting a statute of limitations defense." Singleman v. St. Francis Med. Ctr., 777 N.W.2d 540, 543 (Minn. Ct. App. 2010). Estoppel is ordinarily a question reserved for the jury, but "when only one inference can be drawn from the facts," it is a question for the court. L & H Transp., 403 N.W.2d at 227.

There were no promises or inducements made by General Casualty to Northern that adequately support its equitable estoppel argument. The two property inspections and the letter

6

inviting Northern to participate in an appraisal each occurred after the limitations period had expired. "Acts occurring after a limitation period has run can normally [ ] neither waive nor create an estoppel." 17 Couch on Insurance § 238:11 (3d 2016). While courts in Minnesota, unlike other jurisdictions,[4] have not explicitly recognized this consideration, none of the cases cited by Northern sustained an estoppel argument due to promises or inducements made by the insured after the expiration of the limitations period. The principal case relied upon by Northern, Brenner v. Nordby, is no exception. 306 N.W.2d 126 (Minn. 1981). There, the insurer allegedly failed to deny liability and stated that it was conducting an investigation that may lead to settlement. Id. at 127. The insured's claim that he relied on those representations when he failed to timely bring suit within the one-year limitations period created a factual dispute for the reliance element of estoppel. Id. Although not expressly stated, the cited assurances from the insurance company must have been made before the limitations period expired. If they were not, then the insured's claim that the insurer's statements induced him into not suing within the limitations period makes no sense.

Other estoppel cases applying Minnesota law also focus on the insurer's conduct occurring prior to the limitations bar. For example, in Hansen, the insurer extended a settlement offer to its insured after the policy's suit limitations period expired. 2016 WL 2901738, at *3. But when the validity of the insured's estoppel argument was being assessed, that court did not cite the settlement offer as conduct or a promise the insured could reasonably have relied upon.

---

[4] In Wisconsin, for example, "in order for estoppel to apply, the fraudulent or inequitable acts relied on . . . must have occurred before the expiration of the limitation." Johnson v. Johnson, 508 N.W.2d 19, 22 (Wis. Ct. App. 1993) (citing State ex rel. Susedik v. Knutson, 191 N.W.2d 23, 25 (Wis. 1971)).

Id. at *6. Rather, only the insurance company's statement "that it would 'gladly look at'" the damage was referenced. Id. And finally, nearly 75 years ago, the Minnesota Supreme Court stated "[t]he inescapable inference from plaintiff's evidence, if believed, is that defendant, by soothing promises and assurances made before the statute had run, lulled plaintiff into believing that if he did not sue defendant would either pay the note or make a settlement" after the limitations period expired. Albachten v. Bradley, 3 N.W.2d 783, 369 (Minn. 1942) (emphasis added).

Prior to May 28, 2014, the only conduct Northern cites that evinces a claimed promise or inducement is General Casualty's investigation of the claim.[5] That alone, however, is insufficient as a matter of law for equitable estoppel to nullify the suit limitations provision. See Oreck v. Harvey Homes, Inc., 602 N.W.2d 424, 428–29 (Minn. Ct. App. 1999) (finding no estoppel, in part, because insurer did not make any assurances that it would take responsibility for the claimed property damage); Hansen, 2016 WL 2901738, at *6 (applying Minnesota law and finding insurer's statements made during the limitations period "that it would 'gladly look at' any 'physical evidence'" were insufficient to create an estoppel).[6]

---

[5] Even if Northern's position is credited and notice of loss was communicated to General Casualty "almost immediately" after the May 28, 2012 storm, the result is the same because there is still no legally sufficient promise or inducement made by General Casualty during the limitations period that can estop General Casualty from asserting the limitations bar. Duffney Decl. ¶ 3.

[6] Other states are in accord. See, e.g., N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc., 413 F. Supp. 2d 295, 301 (S.D.N.Y. 2006) (applying New York law and stating "steps taken by an insurer to investigate a claim do not constitute waiver or estoppel"); Prime Medica Assocs. v. Valley Forge Ins. Co., 970 A.2d 1149, 1158 (Penn. 2009) ("The mere declaration that Insurer was investigating the claim is insufficient to prove Insured was induced to forbear from commencing suit.").

Viewing the evidence in the light most favorable to Northern, because General Casualty did not make any promises or otherwise induce Northern into inactivity before May 28, 2014, Northern's equitable estoppel argument fails.

**2. Waiver**

Northern additionally argues that General Casualty has waived it ability to enforce the policy's suit limitation provision. "Waiver is the intentional relinquishment of a known right and is consequential in nature." Hedged Inv. Partners, L.P. v. Norwest Bank Minn., N.A., 578 N.W.2d 765, 771 (Minn. Ct. App. 1998). But waiver, like equitable estoppel, requires an express or implied relinquishment of a known right occurring prior to the expiration of the limitations period. 17 Couch on Insurance § 238:11 (3d 2016). Because the record is bereft of any evidence prior to May 28, 2014 demonstrating General Casualty's intentional relinquishment of the two-year suit limitation provision, Northern's waiver argument also fails.

**3. Suit Limitation Period**

Finally, Northern argues that the policy's two-year suit limitation has not expired. Northern contends that the limitations period only began to run on January 6, 2016, the date General Casualty first refused to participate in an appraisal process. Northern argues that appraisal and arbitration demands are similar in kind and Minnesota law treats them as equals for suit limitation purposes. Therefore, according to Northern, since the limitations period on arbitration agreements commences when a demand for arbitration is refused, it follows that the limitation period for invoking an appraisal begins when an appraisal demand is refused.

Northern's argument suffers from two material defects. First, Northern relies upon a case that does not support its position that arbitration and appraisal agreements are governed by the

same law. Rather, QBE Insurance Corp. v. Twin Homes of French Ridge Homeowners Ass'n stated that "[a]ppraisal decisions are subject to . . . the arbitration statute." 778 N.W.2d 393, 398 (Minn. Ct. App. 2010) (emphasis added). There is nothing in QBE that stands for the proposition that suit limitation provisions for appraisal and arbitration proceedings commence at the same time.

More significantly, the Minnesota Court of Appeals explicitly concluded that "the statutorily required appraisal provision is not an agreement to arbitrate." Johnson v. Mut. Serv. Cas. Ins. Co., 732 N.W.2d 340, 346 (Minn. Ct. App. 2007). On a very similar record, Johnson rejected the insured's argument that its demand for appraisal made after the policy's two year suit limitation provision expired needed to be honored; Johnson instead held that an "appraisal provision is not an agreement to arbitrate . . . and the appraisal provision is governed by the two-year limitation on actions or suits to recover under the policy." Id.[7] Contrary to Northern's position, because arbitration and appraisal are not interchangeable, the limitations period did not commence when Northern's request for appraisal was rejected. Rather, in accord with Johnson, Northern's request for appraisal is barred by the policy's two-year suit limitation provision.

**C. Motion to Compel Appraisal**

Northern's motion to compel appraisal necessarily hinges on the success of its estoppel, waiver, or suit limitations arguments. Having concluded that neither theory presents a

---

[7] Northern attempts to distinguish Johnson on its facts, arguing that the insured and insurer in that case disputed both the scope of loss and liability, whereas here, General Casualty's adjustments are an admission of liability and thus only the amount of loss is disputed. Johnson, however, stated that "a dispute developed between [the insured] and [the insurer] over the amount of the loss" and, more importantly, its holding that appraisal was barred by the suit provision was in no way limited to any factual distinctions Northern has identified. Johnson, 732 N.W.2d at 342.

meritorious justification for invalidating the suit limitation provision, Northern's motion to compel appraisal fails.

## IV. CONCLUSION

As expressed at the hearing, both parties fumbled their handling of this seemingly routine insurance claim: Northern should have been more diligent in pursuing and documenting its claim, and General Casualty should not have extended an invitation for appraisal that it later withdrew. An insurer kindling a belief that an avenue of relief is available only to later smother that hope spawns distrust and encourages litigation.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that General Casualty's Motion to Dismiss [Docket No. 5] is **GRANTED** and Northern Promotions, Inc.'s Motion to Compel Appraisal Hearing [Docket No. 13] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 5, 2016